UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

CORY L. WILLIAMS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

No. 2:14-cv-02208-SLD

ORDER

Cory Williams has filed a motion under 28 U.S.C. § 2255, contending in part that his guilty plea was not made voluntarily. The district judge who presided over Williams's criminal case violated Rule 11 when he opined on a draft plea agreement between Williams and the government, but Williams has not met his burden to show that he would probably have gone to trial absent the violation. The motion is DENIED.[1]

BACKGROUND

A federal grand jury returned a superseding indictment against Williams that charged him with two counts of armed robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a); one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d); and three counts of brandishing a firearm during and in relation to each of the three robberies, *see* 18 U.S.C. § 924(c)(1)(A)(ii). Superseding Indictment, Cr. ECF No. 11.[2] The three robberies occurred on

---

[1] Williams has raised several other issues in his motion, which will be addressed at the end of this order. After the government responded to Williams's pro se motion, the Court appointed the Federal Defender for the Central District of Illinois to represent Williams, given the Rule 11 issue raised by the initial motion. *See* 18 U.S.C. § 3006A(a)(2)(B). Unless otherwise noted, the Court relies on Williams's counseled submissions, and cites his pro se motion, ECF No. 1, as "Pro Se Motion."

[2] Citations to the docket in Williams's criminal case, *United States v. Williams*, No. 2:12-cr-20011-MPM-DGB (C.D. Ill.), take the form "Cr. ECF No. __ ."

1

different days over a roughly month-long period in June and July 2011, and the Hobbs Act robberies victimized two different motels. *See id.* If convicted of every charge in the indictment, Williams faced a statutory minimum prison sentence of 57 years, which assumes a sentence of zero months for any of the three robberies. *See* 18 U.S.C. §§ 924(c)(1)(A)(ii) and (c)(1)(C)(i) (imposing consecutive 7-year mandatory minimum for first § 924(c)(1)(A)(ii) conviction and consecutive 25-year mandatory minimum for any subsequent § 924(c) conviction); Plea Agreement ¶¶ 23–24, Cr. ECF No. 19. Williams was 22 years old at the time of the crimes. *See* Presentence Investigation Report ("PSR") at 3, Cr. ECF No. 26.

Williams pleaded guilty pursuant to Rule 11(c)(1)(C) to the two motel robberies, the bank robbery, and the § 924(c) count attached to the bank robbery. Plea Agreement ¶ 3. In the final written agreement, the parties stipulated to the imposition of a sentence that included a 216-month term of imprisonment (comprising three concurrent 132-month terms for the motel robberies and the bank robbery, plus one 84-month term on the § 924(c) count to run consecutively to the other terms). *Id.* ¶ 25. The government agreed to drop the other charges.

The plea agreement contains several waivers of Williams's rights. Relevant here, Williams waived his right to collaterally attack the conviction or sentence. Plea Agreement ¶¶ 28–29. Specifically, the plea agreement reads:

> Regardless of any advice his attorney has given him one way or the other . . . the defendant hereby knowingly and voluntarily waives his right to challenge any and all issues relating to his plea agreement, conviction and sentence . . . . The defendant acknowledges and agrees that the effect of this waiver is to completely waive any and all rights and ability to appeal or collaterally attack any issues relating to his conviction and to his sentence so long as the sentence is within the maximum provided in the statutes of conviction.

*Id.* ¶ 29. It continues:

> The defendant states that he has not been coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive his rights to appeal or collaterally attack his sentence by his attorney or anyone else.

*Id.* ¶ 30.

The Assistant United States Attorney assigned to the case attached a draft of the plea agreement to an email addressed to Williams's attorney, to which email she copied the district judge among other recipients. That correspondence was part of the district judge's customary review of Rule 11(c)(1)(C) plea agreements before change-of-plea hearings conducted by a magistrate judge. *See* Resp. Ex. A, ECF No. 16-1 (memorandum from District Judge McCuskey to Magistrate Judge Bernthal regarding change of plea procedures).[3] After reviewing the draft plea agreement, the district judge responded via email to the prosecutor (and copied Williams's attorney):

> I have just . . . read the proposed 11(c)1(C) plea agreement. I concur with the disposition, which is exceedingly fair to the defendant. Obviously, if he is convicted at trial the defendant will be sentenced to the equivalent of a life sentence. Only a fool would refuse this plea agreement. . . . I am fully ready to try the case to a jury if the defendant wishes to proceed with a jury trial . . . .

ECF No. 1 at 30. The prosecutor's email was sent on July 3, 2013, and the district judge replied the following day. *Id.* Also on July 3, the magistrate judge scheduled a change of plea hearing for July 8.

The docket reflects that trial in Williams's criminal case was set to begin July 22, 2013, with an acceptance of responsibility deadline of July 8, 2013. The government filed its statement of the case; proposed jury instructions; and witness and exhibit lists on June 26, 2013. *See* Cr. Dkt. On July 8, 2013, Williams pleaded guilty pursuant to a Rule 11(c)(1)(C) agreement that was materially identical to the draft previously circulated among the lawyers and the district

---

[3] It is not clear whether Judge McCuskey typically reviewed finalized agreements or draft pleas. In any case, the agreement he reviewed in this case was described by the prosecutor in the email as "the proposed plea agreement" and "a draft . . . .subject to revisions."

3

judge. The magistrate judge accepted the plea via a standard colloquy, *see* Fed. R. Crim. P. 11(b), that included Williams's sworn admission in open court that he in fact committed the charged crimes and that he entered his guilty plea voluntarily. *See* Am. Mot. Ex. A at 37 (July 8, 2013 Hr'g Tr.), ECF No. 14-1. He then submitted a report and recommendation, *see* Fed. R. Crim. P. 59(b)(1), to the district judge stating in part that he found "the guilty plea was knowing and voluntary." Cr. ECF No. 22. Williams did not object to the report and recommendation. The district judge approved the report and recommendation in August 2013, and subsequently imposed the agreed-upon sentence on November 14, 2013. Williams did not seek to withdraw his plea at any point before final judgment entered. Williams did not object to any portion of the operative PSR that was prepared for the sentencing hearing. Nov. 14, 2013 Minute Entry.

Williams alleges in his pro se motion that five days before the change of plea hearing, his lawyer "informed [Williams] that the prosecutor ha[d] p[roposed] a plea agreement . . . . [Whereby the prosecutor] would dismiss two counts of carrying a firearm in relation to a crime for a plea of guilt[y]." Pro Se Mot. IV, ECF No. 1 at 17. Williams further states that on the morning of the change of plea hearing his attorney informed Williams of the content of Judge McCuskey's email quoted above, and that information caused Williams to feel that "he wasn't going to get a fair trial and that the judge wasn't going to call the trial down the middle." *Id.* at V, ECF No. 1 at 18. As a consequence, Williams alleges that his guilty plea was not voluntary. *Id.* (asserting actual innocence and claiming he "took the plea [in]voluntar[il]y[4] because of the threats of the judge and court taking his life").

Williams's amended (counseled) motion asserts two bases for relief. First, that his plea was not entered voluntarily and therefore did not provide him due process. Second, that his trial attorney's performance was constitutionally defective because the attorney failed to seek the

---

[4] This perhaps-significant alteration captures the Court's understanding of Williams's pro se motion.

district judge's recusal and that failure caused Williams to plead guilty. As explained below, the second argument overlaps logically with the first. Williams's amended motion and also his reply brief contend that the collateral attack waiver contained in the plea agreement is not enforceable because it was the result of an invalid plea or the result of ineffective assistance of counsel or both.

The government, notwithstanding Department of Justice policy that would perhaps suggest a different litigation tactic, *see* Mot. Ex. B, ECF No. 14-2 (memorandum from Deputy Attorney General to all federal prosecutors instructing that federal prosecutors should not seek to enforce collateral attack waivers related to ineffective assistance of trial counsel), first seeks to enforce Williams's collateral attack waiver as to all claims. According to the United States, "[t]he only claims that survive a [s]ection 2255 waiver are claims that (1) the waiver itself was not knowingly and voluntarily made; or (2) defense counsel provided ineffective assistance in connection with negotiating the waiver itself." Resp. 9. As part of its waiver arguments, the government contends that Williams's plea was not coerced and was not the product of ineffective assistance of counsel. The government finally adds that Williams's claims are procedurally defaulted.

## ANALYSIS

Federal Rule of Criminal Procedure 11 governs plea agreements. In relevant part, Rule 11 states that "[a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement," but that "[t]he court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1). "Excluding the judge from the plea discussions . . . serves three purposes: it minimizes the risk that the defendant will be judicially coerced into pleading guilty, it preserves the impartiality of the court, and it avoids any appearance of impropriety." *United States v.*

5

*Kraus*, 137 F.3d 447, 452 (7th Cir. 1998); *see also United States v. Davila*, 133 S. Ct. 2139, 2146 (2013) ("[Rule 11(c)(1)'s] prohibition [on judicial involvement in plea discussions] was included out of concern that a defendant might be induced to plead guilty rather than risk displeasing the judge who would preside at trial."); *United States v. Bradley*, 455 F.3d 453, 460–61 (4th Cir. 2006); Fed. R. Crim. P. 11 advisory comm. note (1974 amendment). The sentencing court must ultimately evaluate any Rule 11(c)(1)(C) agreement to ensure the proposed sentence is a just one, but its "authority to comment is confined to an agreement that the parties have themselves finalized and that has been properly put before the court for approval pursuant to the rule." *Kraus*, 137 F.3d at 453.

The following version of the facts is not in dispute: the prosecutor and defense attorney settled on terms for a tentative closed plea; the prosecutor sent a draft of that agreement to the district judge; the district judge responded as quoted above and the defense attorney communicated the district judge's sentiment to his client the morning of the change of plea hearing; the magistrate judge referred several times to the district judge's review and approval of the proposed plea agreement during the Rule 11 colloquy; Williams pleaded guilty with knowledge that the district judge thought the proposed plea was fair and that Williams would be a "fool" if he proceeded to trial. That sequence violates Rule 11. *See Kraus*, 137 F.3d at 456 (finding a violation, where, in part, "the terms of an inchoate plea agreement were floated before the court, and only after a favorable response was received did the parties finalize their agreement and initiate a Rule 11 hearing"); *see also United States v. Pena*, 720 F.3d 561, 573 (5th Cir. 2013); *United States v. Baker*, 489 F.3d 366, 373–74 (D.C. Cir. 2007); *United States v. Barrett*, 982 F.2d 193, 194–95 (6th Cir. 1992), *abrogated on other grounds by United States v. Davila*, 133 S. Ct. 2139 (2013). Here, rather than wait to approve or reject an executed

agreement, the district judge telegraphed his reaction, and perhaps impliedly communicated his perception of the strength of the government's case. That the district judge violated Rule 11 does not necessarily imply an involuntary plea, however, and the parties disagree about the coercive effect that resulted from the judicial participation in the plea process. *Compare* Mot. 13 ("This case presents the most extreme case of judicial participation in plea negotiations imaginable."), *with* Resp. 15–16 (email's content "inartful," but was not coercive at all in this case).

      Had the issue been raised on direct appeal, a remedy may have required vacating the plea and sentence if Williams could have shown, based on a review of the entire record, that the violation affected his substantial rights. Fed. R. Crim. P. 11(h); *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (defendant who does not object to Rule 11 error in district court "must show a reasonable probability that, but for the error, he would not have entered the plea"); *Kraus*, 137 F.3d at 458. This is not a direct appeal. Because this is a motion under § 2255, Williams must present the Rule 11 violation through the lens of an ineffective assistance of counsel claim or a claim that his plea was involuntary in the constitutional sense. *See United States v. Timmreck*, 441 U.S. 780, 784–85 (1979) (holding that a Rule 11 violation, without more, is not a basis for post-conviction relief). Indeed, those are the claims presented in his amended motion, both of which are generally cognizable in a § 2255 proceeding if not barred by waiver or procedurally defaulted. *See Hays v. United States*, 397 F.3d 564 (7th Cir. 2005) (analyzing federal prisoner's claims raised via § 2255 motion that he received ineffective assistance of counsel and that his plea was not voluntary).[5] "[T]he proponent of collateral review

---

[5] It is generally true that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). Williams's voluntariness-of-plea claim fits within the exception that excuses procedural default if further factual development would be needed to fairly present the claim, *see id.*, because the district judge's email would not have been part of the trial

7

. . . ha[s] to produce evidence demonstrating entitlement to relief." *Stanley v. United States*, --- F.3d ---, No. 15-3728, slip op. at 6 (7th Cir. June 27, 2016) (citing *Hawk v. Olson*, 326 U.S. 271, 279 (1945)); *see also, e.g.*, *Virsnieks v. Smith*, 521 F.3d 707, 714–15 (7th Cir. 2008) (writing in a habeas case arising under 28 U.S.C. § 2254: "the defendant bears the burden of proving that the plea he entered was involuntary and unintelligent").

All the legal issues in this matter hinge on one question: would Williams have entered his guilty plea notwithstanding the coercive effect of the district judge's email and the magistrate judge's repeated indication during the plea colloquy that the district judge approved the proposed deal? Several dominoes fall if Williams can show that the answer to that question is no.

First, the issue of whether his plea was voluntary is the foundation of Williams's due process claim. Due process requires that a guilty plea "be knowing and voluntary." *United States v. Gonzalez*, 765 F.3d 732, 741 (7th Cir. 2014); *see also Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008) ("A plea agreement is constitutionally valid if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."). If Williams can show that there was a reasonable probability that he would have proceeded to trial absent any judicial coercion, then he may be entitled to relief. The voluntariness of a guilty plea depends on "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970); *Torzala*, 545 F.3d at 522. Judicial participation in plea negotiations inherently exerts some coercive pressure on a defendant to plead guilty, *Kraus*, 137 F.3d at 457, but that coercion is only one factor in the voluntariness calculus. *See United States v. Speed*

---

record. *See also Vinyard v. United States*, 804 F.3d 1218, 1226 (7th Cir. 2015) (citing *Waley v. Johnson*, 316 U.S. 101, 104 (1942)). Although not procedurally barred, however, Williams must show that he suffered actual prejudice from any violation of due process. *See Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) ("When an issue is not raised on direct appeal, but later attacked collaterally via a petition for post-conviction relief, the petitioner will be barred from collateral review unless he can show good cause for failing to raise the issue and actual prejudice."). The voluntariness of plea issue, therefore, collapses into a prejudice analysis that is identical to the one underlying Williams's Sixth Amendment claim.

*Joyeros, S.A.*, 204 F. Supp. 2d 412, 422–24 (E.D.N.Y. 2002) ("The words 'overbearing' and 'sheer inability' imply that some degree of 'coercion' does not negate the validity of a guilty plea.").

Next, if Williams's guilty plea was not voluntary then the collateral attack waiver in the plea agreement would not be valid. Broadly speaking, collateral attack waivers contained in plea agreements are enforceable. *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013). That rule admits two exceptions: collateral attack waivers are not enforceable if they are not "the product of the defendant's free will" or are the result of deficient representation related to the negotiation of the plea agreement. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999); *see also, e.g.*, *Hurlow*, 726 F.3d at 964–66 & n.5 ("[A]n attorney's ineffectiveness with regard to the plea agreement as a whole, and not just the specific waiver provision at issue, renders the waiver unenforceable."); *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) ("Some constitutional theories—particularly claims that the plea agreement was involuntary or the result of ineffective assistance of counsel—concern the validity of the plea agreement and thus would knock out the waiver of appeal along with the rest of the promises; all terms stand or fall together."). Williams argues both exceptions apply—that his plea was involuntary and that it was the result of deficient representation in the plea bargaining process (his lawyer's failure to spot the Rule 11 issue and seek recusal, thus alleviating any threat of judicial coercion). If either claim succeeds then the waiver is not enforceable.

Finally, whether Williams would have entered his guilty plea absent judicial coercion bears directly on the ineffective assistance of counsel issue's prejudice analysis. A criminal defendant is entitled by the Sixth Amendment to the help of a competent lawyer. *Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012); *Vinyard v. United States*, 804 F.3d 1218, 1224 (7th Cir.

9

2015). If an attorney's performance falls below an objective standard of reasonableness and causes a defendant prejudice, post-conviction relief may be available. *Vinyard*, 804 F.3d at 1225 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). When conviction is obtained via plea, prejudice means that "[t]he defendant must show that if his counsel had not made the error of which he complains . . . there was a reasonable probability that he . . . would have gone to trial rather than have pleaded guilty." *DeBartolo v. United States*, 790 F.3d 775, 777–78 (7th Cir. 2015) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "The defendant must also show that to reject the plea bargain and go to trial would have been rational under the circumstances." *Id.* at 778 (citing *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). Assuming Williams's trial lawyer's failure to seek the district judge's recusal amounted to deficient performance, the Sixth Amendment analysis therefore turns on whether Williams can show he would have gone to trial absent any judicial coercion (the variable that may have dropped out if the lawyer had moved for recusal) and also that going to trial would have been a rational decision.

All the issues in this habeas case—the enforceability of the collateral attack waiver; the voluntariness of the plea; and the ineffective assistance of trial counsel—therefore turn on whether Williams can show there is a reasonable probability that he would not have entered the guilty plea had the district judge not opined on the draft agreement.

Williams has not shown that, absent the district judge's participation in the plea bargaining process in this case or his lawyer's failure to seek recusal, a rational defendant would have proceeded to trial and in fact he would have done so. The relevant factors in this case include the strength of the government's evidence (the PSR suggests the evidence of guilt was strong, and that evidence has never been called into question); the severity of the Rule 11 violation (it was significant); and Williams's previous experience with the criminal justice

10

system (several convictions via plea and one acquittal after a bench trial). Thus, he has not shown that his plea was involuntary or that he received constitutionally ineffective assistance of counsel.

There is little evidence in the record that Williams's guilty plea was a result of judicial coercion. The only direct evidence of involuntariness, if it is evidence at all, is Williams's conclusory statement in his pro se motion that he is "innocent of all charges" and that he thought the district judge's reaction to the proposed plea bargain showed the district judge would not be able to preside fairly over a trial.[6] The circumstantial evidence that Williams's plea resulted from judicial coercion includes at least: the district judge's email; the magistrate judge's repeated reference to the district judge's approval of the proposed plea; and the short amount of time that elapsed between when Williams learned of the district judge's comments and his plea colloquy.[7]

While it is true the district judge's participation in the plea process is far from ideal, the record read as a whole suggests the plea was not coerced by the judge's improper commentary. Instead, Williams's decision to plead guilty was far more likely a result of the statutory minimum penalties attached to the stacked § 924(c) counts. Of course, the coercive effect of the potential penalties on a defendant's decision to plead guilty only inures if the government's evidence is strong and he is likely to be convicted. In other words, the stronger the case the less likely the district judge's email influenced Williams's decision and vice versa. *Cf. Brady*, 397 U.S. at 749

---

[6] The district judge's comment that if convicted of all charges Williams faced effectively a life sentence is actuarially correct. As explained above, the statutory minimum sentences attached to the charged offenses are severe and Williams would have been close to 80 years old at the time of his release.

[7] Notably absent from the record is any affidavit or declaration from Williams or, more importantly, from his trial attorney. Williams's trial attorney could have provided particularly useful evidence regarding the strength of the government's case, the likelihood of the criminal case proceeding to trial, and the content of the advice he provided to Williams. Williams's trial attorney would not have been bound by attorney-client privilege because Williams waived that privilege when he asserted an ineffective assistance of counsel claim.

("It may be that [the defendant], faced with a strong case against him and recognizing that his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty . . . ."); *Hays v. United States*, 397 F.3d 564, 570 (7th Cir. 2005) (relying in part on "the evidence of guilt in the record" to find that the defendant's plea was voluntary in a § 2255 case).

The strength of the government's case is apparent from Williams's PSR.[8] Witnesses to the bank robbery all made similar statements that the robber wore baggy black clothing and a mask, and held a gun. The police found discarded baggy black clothing, a mask, and a gun near to the scene of the bank robbery, and matched fingerprints on the mask and a bullet in the gun to Williams's fingerprints. *See* PSR ¶¶ 15–18. One of the motel robberies relied principally on an eyewitness identification by the motel's clerk. *See id.* ¶¶ 13–14. And that Williams committed the other motel robbery was corroborated by both an eyewitness and by a woman who told police that she in fact participated in that robbery with Williams. *Id.* ¶¶ 11–12, 20–21. Williams faced strong evidence of guilt in at least two of the robberies (and at least some evidence of guilt in the third). Convictions on only two of the three § 924(c) counts would require a sentence of at least 32 years imprisonment, again assuming a sentence of zero years on any of the underlying robbery charges. Williams therefore agreed to a plea deal that likely spared him at least 14 years in prison. Williams has not pointed to any evidence that calls the accuracy of his conviction into question, that is, he has not credibly argued he was innocent and could have prevailed at trial. That failure suggests he did not intend to go to trial (and it would not have been rational for him to have done so) and leave the government's offer on the table.

The Rule 11 violation in this case was significant, if not flagrant—the judicial participation preceding the plea colloquy directly contravenes the text and purpose behind the

---

[8] It bears repeating that Williams did not object to any of the PSR's content at any point before or during his sentencing hearing, nor has he rebutted or even called into question any of its facts at any stage of this habeas proceeding.

Rule. While the district judge's comments were something worse than "inartful," as the government contends, however, they were also less than "about as coercive as it gets," as Williams put it. This is not a case where the judge dictated the sentence ex ante or otherwise crafted the plea deal's terms—instead he signalled his approval of terms the parties had already reached independently and reduced to writing, if only tentatively so. But as an example of a modern Rule 11 violation that was far more coercive that what occurred in this case, *see Baker*, 489 F.3d at 360–62 (plea vacated on direct appeal where district judge implied in open court that defendant should plead guilty by comparing defendant's case to a defendant who the judge had recently sentenced, subtly suggesting the sentence imposed would be similar). The Rule 11 violation here, though significant, does not support a finding of involuntariness standing alone because the parties had essentially reduced their agreement to writing independently before receiving the judge's comments.

Finally, Williams had some experience with the criminal justice system, which is relevant because a Rule 11 violation would have a less coercive effect on a previously convicted felon than on a first-time offender. Williams had one adult criminal conviction for possession of marijuana, but also was convicted of arson as a 16-year old. PSR ¶¶ 59–60. Additionally, he had been acquitted in a bench trial as a 15-year old on charges of mob action and criminal damage to property. *Id.* ¶ 63. His criminal history shows that he was not a newcomer to the criminal process, and his acquittal in a bench trial suggests he would likely have been aware that judges are able to assess a case fairly on its facts. Williams's experience in the criminal justice system cuts against a finding of involuntariness.

Williams admitted under oath and in open court that his plea was not the result of any threats or coercion. A presumption of truth attaches to a defendant's sworn admissions in a plea


Rule. While the district judge's comments were something worse than "inartful," as the government contends, however, they were also less than "about as coercive as it gets," as Williams put it. This is not a case where the judge dictated the sentence ex ante or otherwise crafted the plea deal's terms—instead he signalled his approval of terms the parties had already reached independently and reduced to writing, if only tentatively so. But as an example of a modern Rule 11 violation that was far more coercive that what occurred in this case, *see Baker*, 489 F.3d at 360–62 (plea vacated on direct appeal where district judge implied in open court that defendant should plead guilty by comparing defendant's case to a defendant who the judge had recently sentenced, subtly suggesting the sentence imposed would be similar). The Rule 11 violation here, though significant, does not support a finding of involuntariness standing alone because the parties had essentially reduced their agreement to writing independently before receiving the judge's comments.

Finally, Williams had some experience with the criminal justice system, which is relevant because a Rule 11 violation would have a less coercive effect on a previously convicted felon than on a first-time offender. Williams had one adult criminal conviction for possession of marijuana, but also was convicted of arson as a 16-year old. PSR ¶¶ 59–60. Additionally, he had been acquitted in a bench trial as a 15-year old on charges of mob action and criminal damage to property. *Id.* ¶ 63. His criminal history shows that he was not a newcomer to the criminal process, and his acquittal in a bench trial suggests he would likely have been aware that judges are able to assess a case fairly on its facts. Williams's experience in the criminal justice system cuts against a finding of involuntariness.

Williams admitted under oath and in open court that his plea was not the result of any threats or coercion. A presumption of truth attaches to a defendant's sworn admissions in a plea

colloquy.[9] *See, e.g.*, *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). Williams has not provided sufficient evidence to overcome that presumption. In sum, the district judge violated Rule 11(c)(1) by commenting on the terms of an incomplete plea deal. Williams has not shown, however, that based on all the circumstances of his case there was a reasonable probability that he would have rejected the proposed plea, the terms of which he had ample notice, and proceeded to trial absent the district judge's comments. In other words he has not shown that his plea was entered involuntarily or that he suffered prejudice from any constitutional violations. Therefore, his due process and ineffective assistance claims necessarily fail, and the collateral attack waiver in his plea agreement is valid and enforceable. Because the collateral attack waiver is valid, Williams's other claims are dismissed as well.

One matter remains. A district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. S. 2255 R. 11(a). Appeal to the Seventh Circuit may not be taken without issuance of such a certificate. 28 U.S.C. § 2253(c)(1). The certificate should issue "only if the applicant has made a substantial showing the denial of a constitutional right." *Id.* § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *White v. United States*, No. 07-CV-262, 2008 WL 2157031, at *1 (E.D. Wis. May 22, 2008) (citing *Miller-El v. Cockrell*, 537 U.S. 322. 327 (2003), rev'd on other grounds, *Miller-El v. Dretke*, 545 U.S. 231

---

[9] It is true that a "defendant's responses to the judge's questioning during the formalistic plea colloquy do not allay . . . concerns regarding voluntariness" when the judge's participation is the source of coercion. *Kraus*, 137 F.3d at 457. Yet that does not mean a defendant's statements in court are worthless. In this case, Judge Bernthal was able to observe Williams during the lengthy colloquy and ultimately found, based on Williams's verbal answers and demeanor, that his statements were voluntary. Accordingly, while Williams's statement that his plea was voluntary may be given less weight than in a due process challenge without an issue of judicial coercion, they are still afforded a presumption of truth that must be overcome with evidence.

(2005)). If the court grants a certificate of appealability, that certificate must indicate upon which issues the applicant has made a substantial showing of the denial of his constitutional rights. 28 U.S.C. § 2253(c)(3).

As explained above, Williams has not shown that, absent the district judge's comments, he would have rejected the proposed plea agreement and gone to trial, and thus, his petition for a writ of habeas corpus must be denied. However, the court finds that jurists of reason could disagree with its determination, and the issues presented are adequate to deserve encouragement to proceed further. Williams has shown a Rule 11 violation, and although the court is not persuaded that he was prejudiced by the breach, other jurists might weigh the egregiousness of the violation more seriously, or view differently the reasonableness of Williams's having proceeded to trial absent the judge's comments. Williams is thus granted a certificate of appealability on both issues he raised in his memorandum in support of his petition for a writ of habeas corpus: (1) whether his plea was entered involuntarily, depriving him of his Fourteenth Amendment right to due process of law, and (2) whether his trial attorney provided him with ineffective assistance, in violation of his Sixth Amendment right to effective assistance.

## CONCLUSION

For the reasons stated above, Cory Williams's motion to vacate his conviction, ECF No. 1, is DENIED. The government's motion to substitute attorney, ECF No. 13, is GRANTED. Williams's motion for leave to file a reply, ECF No. 17, is GRANTED. Williams's pro se motion for leave of court, ECF No. 20, is DENIED. Williams's Motion to the Court, ECF No. 21, is MOOT. The Clerk is directed to enter judgment and close the case. A certificate of appealability shall issue, as described herein.

Entered August 22, 2016.

                                                    s/ Sara Darrow
                                                    SARA DARROW
                                       UNITED STATES DISTRICT JUDGE